wo

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wesley Patterson, ) | No. CV-08-0533-PHX-ROS |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Commissioner of the Social Security ) Administration, ) | |
| Defendant. ) | |

## FACTUAL BACKGROUND

On July 12, 2005, Plaintiff filed an application with the Social Security Administration (SSA) for Disability Insurance Benefits and Supplemental Security Income, alleging a disability beginning June 30, 2005 (AR 15). The SSA Regional Commissioner denied Plaintiff's application and subsequent request for reconsideration (AR 35-42). On July 5, 2006, Plaintiff requested a hearing before an administrative law judge to appeal the Regional Commissioner's decision (AR 43-44). A hearing was held in Phoenix on June 12, 2007 before Administrative Law Judge Ronald S. Robins ("the ALJ"), during which Plaintiff, represented by counsel, submitted evidence and offered testimony (Ar. 15). On September 20, 2007, the ALJ denied Plaintiff's appeal (Ar. 22). On September 27, 2007, Plaintiff appealed the ALJ's determination to the SSA Appeals Council, which affirmed the ALJ's decision on January 25, 2008 (AR 4-6, 9-11). After exhausting the available administrative

remedies, Plaintiff appealed the final decision of the Commissioner of Social Security to this Court on March 18, 2008 (Doc. 1). Plaintiff and Defendant filed cross-motions for summary judgment, on August 29, 2008 and September 29, 2008 respectively (Docs. 20, 22-25). Petitioner's appeal will be granted in part and this case will be remanded to the SSA Office of Disability Adjudication and Review for further proceedings consistent with this opinion.

**STANDARD**

The Court reviews the factual findings of a Social Security Administration Administrative Law Judge ("the ALJ") for lack of substantial evidence. See 42 U.S.C. § 405(g). The substantial evidence standard is somewhere between a scintilla and a preponderance. See Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (*per curiam*). Under this standard, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). The Court also reviews the ALJ's decision for legal error. See Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). The claimant carries the burden to prove disability and failure to prove disability justifies denial of benefits. See Id. Once claimant has met this burden, proving a reduction in residual functional capacity that prevents him from returning to an occupation consistent with his relevant past work experience, the burden then shifts to the government to prove that claimant is capable of performing "other jobs that exist in substantial numbers in the national economy." Bruton v. Massanari, 268 F.3d 824, 828 n.1 (9th Cir. 2001).

**DISCUSSION**

Plaintiff appeals the ALJ's decision on three grounds, alleging that the ALJ improperly:

(A) considered testimony from a vocational expert when determining Plaintiff's ability to return to the workforce in a position outside his relevant past work experience;

(B) discredited Plaintiff's testimony concerning his disability; and

(C) rejected testimony from Plaintiff's treating physician (Doc. 20).

**A. Vocational Expert**

**1. ALJ's Findings**

The ALJ found Plaintiff : (1) has not engaged in substantial gainful activity since the onset of his alleged disability; (2) suffers from various "severe" impairments (including degenerative disc disease, diabetes, and diabetic neuropathy); and (3) cannot return to his former occupations, as either a painter or delivery driver (AR 15-16, 20).  The ALJ specifically determined that Plaintiff "retains the residual functional capacity to perform a limited range of light exertional work" and "can sit for 6 hours total in an 8-hour workday and stand/walk for 6 hours total in an 8-hour workday" but requires a "sit-stand option" (AR 20-21).  A sit-stand option means "[a]n individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically." Social Security Administration, Policy Interpretation Ruling, No. SSR 96-9p (Jul. 1996), 1996 WL 374185, *7.

After determining that Plaintiff is unable to return to an occupation within his past work experience, the ALJ found Plaintiff not disabled under the Social Security Act ("the Act") because, "[b]ased on the testimony of the vocational expert, a conclusion is warranted that the claimant retains the capacity to perform jobs existing in significant numbers in the economy" (AR 20-21). See e.g. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1) ("If we find that you cannot do your past relevant work because you have a severe impairment(s) . . . we will . . . determine if you can make an adjustment to other work. . . . If you can make an adjustment to other work, we will find you not disabled. If you cannot, we will find you disabled.").  To reach this conclusion, the ALJ relied exclusively on the testimony of a vocational expert (AR 21, 352-55).

Plaintiff argues the ALJ committed reversible error by improperly relying on the vocational expert's testimony.  First, Plaintiff contends the vocational expert's testimony was

- 3 -

irrelevant because it concerned the employability of a hypothetical claimant whose residual functional capacity does not adequately match that of the Plaintiff (Doc. 20 at 7-8). Second, Plaintiff contends the ALJ did not consider the U.S. Department of Labor's Dictionary of Occupational Titles before accepting the vocational expert's analysis of the occupations Plaintiff is able to perform (Doc. 20 at 5-7).

**2. Hypothetical Claimant**

To assess Plaintiff's ability to reenter the workforce in an occupation outside his relevant past work experience, the ALJ relied on the testimony of a vocational expert, which was based upon a scenario involving a hypothetical claimant (AR 353-54). The vocational expert opined that the hypothetical claimant could perform work as a cashier or a telemarketer (AR 354). Based on this testimony, the ALJ determined that Plaintiff is not disabled and can return to the workforce as a cashier or telemarketer (AR 21-22). Plaintiff objects to the vocational expert's testimony because the hypothetical claimant did not share the same residual functional capacity as Plaintiff, that is, did not include a sit-stand accommodation, requiring frequent change of position from sitting to standing and visa-versa, to match Plaintiff's specific condition. According to Plaintiff, if a telemarketer or cashier job description does not allow for a sit-stand option adequate to accommodate Plaintiff's needs, then Plaintiff is unable to perform those occupations and the ALJ erred in holding otherwise. The Court agrees.

According to policy guidance issued by the Social Security Administration, where a sit/stand option "cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded." SSR 96-9p, 1996 WL 374185 at *7. The degree to which a sit-stand option erodes a claimant's residual functional capacity "will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand." Id. Accordingly, the SSA policy guidance requires that an ALJ's residual functional capacity

- 4 -

assessment "must be specific as to the frequency of the individual's need to alternate sitting and standing." Id. While this guidance "do[es] not have the force of law," it "represent the Commissioner's interpretation of the agency's regulations" and thus requires judicial deference "as long as [it is] consistent with the Social Security Act and regulations." Ukolov, 420 F.3d at 1005 n.2. Neither party claims SSR 96-9p contravenes the Social Security Act or its regulations, so the Court will treat the policy guidance as a definitive interpretation of SSA regulations and apply it to the ALJ's findings.

The ALJ found Plaintiff requires a sit-stand option, but made no findings concerning the frequency with which Plaintiff needs to alternate positions. Because the ALJ failed to make these findings, the hypothetical claimant did not adequately represent Plaintiff's sit-stand requirements (AR 21-22, 353-54). Thus, the vocational expert's testimony was not helpful to determine whether Plaintiff is employable in occupations outside his past relevant work experience. Stripped of the vocational expert's testimony, the ALJ's finding that Plaintiff is capable of obtaining employment as a telemarketer or cashier is unsupported.

Defendant asks the Court to infer from the ALJ's findings that Plaintiff's condition "can be accommodated by standard breaks and a lunch period" (Doc. 22 at 5). However, the text of SSR 96-9p clearly outlines the ALJ's responsibility when undertaking a residual functional capacity ("RFC") assessment that includes a sit-stand option: "The RFC assessment *must be specific* as to the frequency of the individual's need to alternate sitting and standing." 1996 WL 374185 at *7 (emphasis added). SSR 96-9p leaves no room for inference. Although disguised as an "inference," Defendant's request would essentially require the Court to make a fact finding, a role exclusively reserved for the ALJ and then reviewed on appeal.[1]

---

[1] Plaintiff also claims the ALJ erred in determining Plaintiff's residual functional capacity because "[t]he ALJ did not include [Plaintiff's] need to ambulate with a cane" (Doc. 20 at 7). The Court disagrees. Plaintiff does use a cane pursuant to a prescription written by Plaintiff's treating primary care physician Dr. Howard Norman (Doc. 31 at 5-6) (AR 328). The ALJ may reject Dr. Norman's diagnosis (radiculitis) with clear and convincing reasons supported by substantial

- 5 -

**3. Dictionary of Occupational Titles**

Plaintiff further argues the ALJ erred in accepting the vocational expert's testimony concerning Plaintiff's ability to work as a cashier or telemarketer because the ALJ failed to reference the description of these occupations as found in the U.S. Department of Labor's Dictionary of Occupational Titles (Doc. 20 at 5-7). Plaintiff is correct. Social Security Administration, Policy Interpretation Ruling, No. SSR 00-4p (Dec. 2000) requires that:

> "When a VE [vocational expert] or VS [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT [Dictionary of Occupational Titles]." 2000 WL 1898704, *4.

The purpose of this ruling is to promote consistent application of job descriptions across all social security claimants. See Id. at 2 ("Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT."). The ALJ accepted the vocational expert's testimony concerning job descriptions without consulting the DOT. Given this procedural irregularity, the Court cannot find the ALJ's determination of Plaintiff's residual functional capacity to be supported by substantial evidence. See Massachi v. Astrue, 486 F.3d 1149, 1153-54 (9th Cir. 2007) ("Here, the ALJ did not ask the vocational expert whether her testimony conflicted with the *Dictionary of Occupational Titles* and, if so, whether there was a reasonable explanation for the conflict . . . As a result, we cannot determine whether substantial evidence supports the ALJ's step-five finding that Massachi could perform other work.") (footnotes omitted).

---

evidence. See Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ rejected Dr. Norman's diagnosis, citing Plaintiff's longitudinal medical history (AR 19). The evidence shows that, during a period within approximately one year of the prescription date, none of Plaintiff's examining physicians noted any serious problems concerning Plaintiff's gait (AR 128-29, 191-93). The ALJ also cited the lack of any objective evidence of radiculitis in Plaintiff's medical test results, such as x-rays (AR 126), magnetic resonance imaging (AR 164-66), or electrodiagnostic testing (AR 180, 183), all of which also took place within one year of Dr. Norman's diagnosis (AR 18-19). The ALJ's evidence is substantial and the reasoning is both clear and convincing on this issue.

1   Defendant argues the ALJ's omission was harmless error (Doc. 22 at 1-2).  See Id. at
2  1154 n. 19 ("This procedural error could have been harmless, were there no conflict, or if the
3  vocational expert had provided sufficient support for her conclusion so as to justify any
4  potential conflicts").  However, without adequate supporting evidence, Defendant's claim
5  the omission was inconsequential is insufficient to merit a harmless error determination.[2]  See
6  Robbins v. Social Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) ("[W]e have only found
7  harmless error when it was clear from the record that an ALJ's error was inconsequential to
8  the ultimate nondisability determination") (internal citation omitted).

## B. Plaintiff's Credibility Determination

Plaintiff next challenges the ALJ's evaluation of Plaintiff's credibility: "The undersigned finds the claimant's allegations regarding his pain and limitations and their impact on his ability to work are not totally credible" (AR 21).  Once a claimant presents the ALJ with "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," the ALJ may only reject the claimant's credibility based on evidence of "malingering" or other "clear and convincing reasons."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  See also Thomas v. Barnhart, 278 F.3d 947, 958-60 (9th Cir. 2002) (requiring clear and convincing reasons to undermine claimant's credibility).  Defendant does not dispute the sufficiency of Plaintiff's objective medical evidence or suggest Plaintiff is malingering, so the Court must determine if the ALJ cited substantial evidence, supported by clear and convincing reasons, to find Plaintiff's testimony, at least in part, not credible.

---

[2]The only evidence Defendant cites is Dictionary of Occupational Titles § 299.357-014 (Telephone Solicitor).  According to Defendant, the Dictionary's telephone solicitor description is the same as the telemarketing position described by the vocational expert and thus the ALJ's failure to consult the Dictionary was harmless.  However, the Court finds the vocational expert's testimony does not provide sufficient detail about the requirements of a "telemarketing" position for the Court to meaningfully compare that occupation with the Dictionary's telephone solicitor description and it cannot be determined if the ALJ's error was in fact harmless (AR 354).

- 7 -

The ALJ supported its non-credibility determination with evidence of Plaintiff's inconsistent statements and exaggeration, both of which undermine Plaintiff's credibility concerning his allegations of disabling impairment. See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (allowing ALJ to use "ordinary techniques of credibility evaluation," including consideration of inconsistent statements and exaggeration).

For example, the ALJ cited Plaintiff's failure to pursue pain treatment recommended by his treating physician (e.g. physical therapy) as evidence that Plaintiff is not candidly describing his pain symptoms (AR 19, 187). According to the ALJ's reasoning, if Plaintiff suffers from "pain of such severity as to preclude all work activity," he would likely pursue any means possible to alleviate that pain, especially a method recommended by his treating physician (AR 19). The Court finds this conclusion reasonable and, because Plaintiff does not rebut it, further finds the ALJ's discrediting of Plaintiff's pain allegations is supported by substantial evidence and clear and convincing reasoning. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is a basis for questioning a claimant's credibility).

As another example, the ALJ cited Plaintiff's inconsistent statements concerning his symptoms as evidence that Plaintiff may be exaggerating the severity of his medical problems (AR 19). For example, in September 2005, Plaintiff claimed his "eyes get blurry all day long" (Doc. 65). Yet, three months later Plaintiff told a state examining physician that his eyes were fine and that he had only suffered blurry vision sometime in the past (Doc. 193). By August 2006, Plaintiff reported to his treating urologist that he had no history of eye problems (Doc. 285). Although Plaintiff may have been able to sufficiently explain this inconsistency, he does not, responding only that his vision is irrelevant because the claimed disability does not concern his eyes (Doc. 31 at 6). The Court disagrees. The ALJ reasonably inferred that Plaintiff's exaggeration about his vision symptoms is evidence that he is exaggerating his other symptoms. See Thomas, 278 F.3d at 959 (allowing an ALJ to infer

- 8 -

that lack of candor concerning one subject may carry over into claimant's truthfulness concerning another subject). The Court finds the ALJ's logic is clear and convincing and supported by substantial evidence.

Plaintiff's remaining argument concerning the ALJ's credibility determination is that the ALJ improperly "rejected [Plaintiff's] credibility on the sole ground that his complaints were not fully supported in the medical record" (Doc. 20 at 10). Plaintiff's argument relies on the following proposition: "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal citation omitted). Plaintiff is correct that the ALJ did cite objective medical evidence, or the lack thereof, to discredit Plaintiff's reported symptoms (AR 19). However, such reliance is appropriate as long as it does not form the sole basis for the ALJ's opinion. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (allowing the ALJ to support his adverse credibility determination, in part, with objective medical evidence). As discussed above, the ALJ relied on Plaintiff's longitudinal medical history and commonsense expectations concerning Plaintiff's behavior, in addition to objective medical evidence, in discrediting Plaintiff's testimony. The cited reasons and supporting evidence are legally sufficient to deem Plaintiff not fully credible. The ALJ's credibility determination is affirmed.

**C. Plaintiff's Treating Physician**

Lastly, Plaintiff challenges the ALJ's rejection of the opinion of Plaintiff's treating neurologist, Dr. Troy Anderson (Doc. 20 at 11-14). If a treating physician's opinion is uncontroverted, the ALJ must give "clear and convincing reasons" for rejecting it. Reddick, 157 F.3d at 725 (internal citation omitted). If the opinion is controverted, the Court may reject it with "specific and legitimate reasons." Id. (internal citation omitted). Plaintiff

agrees Dr. Anderson's opinion is controverted and thus the ALJ's rejection of the treating physician's conclusion is judged under the specific and legitimate standard (Doc. 31 at 7).

According to Plaintiff, the ALJ erred in failing to accept Dr. Anderson's March 2006 determination that Plaintiff is unable to sit for more than six hours in a normal workday or stand for more than two hours (AR 184-85). Dr. Anderson based this assessment on the diagnosis of three of Plaintiff's medical conditions: severe low back pain, peripheral neuropathy and lower extremity numbness/weakness (AR 185). The ALJ rejected Dr. Anderson's assessment because the underlying diagnoses were not supported by the medical evidence in the record (AR 19-20). Concerning Plaintiff's lower back, the ALJ found the results from Plaintiff's magnetic resonance imaging scans, as reported by Dr. Anderson in March and December 2006, to be inconsistent with the severity contemplated in Dr. Anderson's assessment (AR 164-65, 187-88, 193-94). The ALJ also rejected Dr. Anderson's diagnosis of peripheral neuropathy because the results from Plaintiff's electrodiagnostic examinations, in March and May 2006, revealed only mild-to-moderate neuropathy and were thus inconsistent with Dr. Anderson's assessment (AR 179-83). Although Plaintiff claims the ALJ's analysis of the electrodiagnostic test results "flies in the face of the medical evidence," the opinions of the physician who administered the test, Dr. Andrew Gorman, and Plaintiff's treating primary care physician, Dr. Norman, support the ALJ's conclusion (Doc. 20 at 13) (AR 180, 183, 330). The ALJ rejected Dr. Anderson's diagnosis of lower extremity weakness and numbness because of the medical record as a whole – such as reports from at least three examining physicians who, between April and December 2005, determined that Plaintiff had little or no restriction in his ability to walk (AR 128-29, 191-93). After undermining the basis of Dr. Anderson's medical evaluation, the ALJ further discredited Dr. Anderson's assessment by citing the opinions of a state examining physician and two state medical consultants, from December 2005 and April 2006, all three of whom determined that Plaintiff suffers little-to-no impairment in his ability to sit or stand for prolonged periods (AR 193-205, 210-17).

Plaintiff is correct that Dr. Anderson's status as a specialist and a treating physician required the ALJ to give special weight to his medical opinion. See 8 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely . . . to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone"); 8 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). But the same rules require an ALJ to question medical opinions that fail to comport with the available medical evidence and are inconsistent with the medical record as a whole. See 8 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Thus, the ALJ appropriately rejected Dr. Anderson's opinion for its failure to conform to medical evidence in the record as a whole, "setting out a detailed and thorough summary of the facts and conflicting clinical evidence." Thomas, 278 F.3d at 957. The Court finds the ALJ's reasoning specific and legitimate and finds the supporting evidence substantial, affirming the determination.

**D. Remedy**

Plaintiff argues the Court should not remand the case for additional administrative findings, but rather should reverse the ALJ's decision and grant Plaintiff the requested social security benefits (Docs. 20 at 14-15; 31 at 8-10). "[W]hen a court of appeals reverses an administrative agency determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa, 367 F.3d at 886. Plaintiff cites a number of cases that fit into such "rare circumstances." But most, if not all, are predicated on the district court crediting as true the testimony of a claimant or accepting the opinion of a treating physician previously rejected by the ALJ (Doc. 31 at 8-10). Neither scenario is applicable. The Court, serving an appellate function, cannot make the factual

determinations necessary to resolve Plaintiff's case. This is the province of the finder of fact, the administrative law judge. Thus, the case will be remanded to the ALJ for further findings of fact and conclusions of law, consistent with this opinion.

Accordingly,

**IT IS ORDERED** Plaintiff's Motion For Summary Judgment And/Or Remand (Doc. 20) **IS GRANTED IN PART**.

**FURTHER ORDERED** this matter (pertaining to sections A.2 and A.3 of this opinion) **IS REMANDED** to the Social Security Administration Office of Disability Adjudication and Review for further factual findings consistent with this opinion.

**FURTHER ORDERED** Defendant's Cross-Motion For Summary Judgment (Doc. 22) **IS GRANTED IN PART**.

**FURTHER ORDERED** this matter (pertaining to sections B and C of this opinion) **IS DISMISSED WITH PREJUDICE**. The Clerk of Court shall close this case.

DATED this 19th day of February, 2009.

Roslyn O. Silver
United States District Judge